## Peoples National Bank of Shippensburg, Trustee, v. Hollar

*E. M. Biddle, Jr.,* for plaintiff.

*J. P. McKeehan,* for defendant.

REESE, P. J., July 20, 1936.—The plaintiff's statement of claim avers that on October 11, 1928, the Shippensburg Cabinet Company executed and delivered to the plaintiff bank, as trustee for the holders of the bonds thereby secured, a mortgage on its real estate to secure the payment of 50 bonds of $1,000 each, which bonds were to be issued and sold through the trustee; that to increase the salability of the bonds a number of the stockholders of the cabinet company, the mortgagor, executed and delivered to the trustee on the same date the following contract of suretyship:

"KNOW ALL MEN BY THESE PRESENTS,

"THAT WHEREAS, the Shippensburg Cabinet Company has this day executed and delivered to the Peoples National Bank of Shippensburg, Pa., as Trustee, Fifty (50) Bonds of One Thousand Dollars ($1,000.00) each and a Mortgage on the land, buildings and equipment of the Shippensburg Cabinet Company, situate in the Borough of Shippensburg, Franklin County, Pennsylvania, to secure the sum of Fifty Thousand Dollars ($50,000.00) loaned and to be loaned by the holders of the said Bonds through the said Trustee, to the Shippensburg Cabinet Company.

"NOW THESE PRESENTS WITNESS, that in consideration of the said loan and acceptance of the said Mortgage therefor by the Peoples National Bank of Shippensburg, Pa., Trustee, we, the undersigned, Stockholders of the Shippensburg Cabinet Company, do hereby guarantee unto the Peoples National Bank of Shippensburg, Pa., Trustee, and unto the holders of the said Bonds, the payment of the said Bonds and Mortgage in the manner here-

inafter set forth, and hereby covenant and agree to and with the said The Peoples National Bank of Shippensburg, Pa., Trustee, and to and with the holders of the said Bonds, that we shall and will severally indemnify and make good to the Peoples National Bank of Shippensburg, Pa., Trustee, and to the holders of the said Bonds, any and all deficit that shall or may accrue upon foreclosure of the said Mortgage and sale of the property upon which it is secured, provided that we shall be severally liable to contribute to the said deficit only in the proportion which our respective holdings of stock in the Shippensburg Cabinet Company as shown by the books of the Company of the date hereof, shall bear to the whole number of shares standing in the names of all subscribers hereto; the number of shares of stock held by each of us and the percentage of such deficit for which each of us shall be liable, being set opposite our respective names herein.

"In Witness Whereof, we have hereunto set our hands and seals this 11th day of October A. D. 1928."

This contract of suretyship is signed by 22 stockholders, and after each signature appears the number of shares owned by each signer. Among the signers appears the name of the defendant and after his signature it appears that he owned 180 shares of the stock of the cabinet company.

The statement further avers that the total number of shares owned by the subscribers to the contract of suretyship was 2,190; that the trustee sold 37 of the 50 bonds secured by the mortgage; that the purchasers of said bonds were apprized of the existence of the contract of suretyship and the existence thereof formed part of the consideration which induced them to purchase the bonds.

It is further averred that the cabinet company was subsequently adjudicated a bankrupt, and that thereafter the trustee in bankruptcy, in compliance with the order of the United States district court, sold the mort-

gaged premises, and that upon distribution of the proceeds among the bondholders the said proceeds were, as of August 1, 1934, insufficient in the sum of $14,942.32 to pay the amount due on the 37 bonds outstanding; that the liability of each subscriber of the suretyship contract in respect to the deficiency amounted to $6.823 per share, and that the defendant, being the owner of 180 shares, became liable for $1,228.14, for which sum, with interest thereon from August 1, 1934, the present action was instituted.

The defendant has filed an affidavit of defense raising questions of law. The first point raised is that the holders of the bonds were joint obligees in the contract of suretyship with the plaintiff and hence should have been made parties plaintiff. We recognize the general rule that if a contract is joint the joint contractors must join in one action to enforce it. But we do not think this principle is applicable here. Each holder of a bond is interested in the payment of his own bond and each does not have a joint interest in the entire amount which may be recovered from the sureties. The only obligee who has a real interest in the entire amount is the plaintiff bank, as trustee or representative of all the bondholders, and we cannot see that the latter, individually, have any joint interest with the representative of all of them. We believe that the contract of the sureties was to the trustee and to the bondholders severally. It will be noted that the promise of the sureties was not made "to the trustee and bondholders", but was made "unto the Peoples National Bank of Shippensburg, Pa., Trustee, and unto the holders of the said Bonds," and again "agree to and with the said . . . Trustee, and to and with the holders of the said Bonds".

Since the promise of the sureties was made to the trustee and bondholders severally, it follows that the trustee can maintain the present action. In 2 A. L. I. Restatement of the Laws of Trusts, 855, §280(b), it is said:

"If a contract right is held in trust, the trustee can

maintain such actions at law against the promisor as he could maintain if he held the contract right free of trust. This rule is applicable to contract rights which were made part of the trust property when the trust was created, and to contract rights acquired by the trustee subsequent to the creation of the trust, including those arising from contracts made by the trustee in the administration of the trust."

At page 858 it is said:

"In an action at law brought by the trustee against a third person, the beneficiary is not a necessary or proper party."

In Rick, Trustee, v. Bell, 29 Dist. R. 953, it is said by Judge Endlich:

"Undoubtedly a joint contract gives a right of joint action, not a separate action by each of the parties jointly interested. . . . But there seems to be no principle of law which forbids a number of parties jointly concerned in a contract to permit one of them to represent all and act for all in suing for their joint rights. That is virtually what has occurred here. And so long as the record protects the defendant against a multiplicity of suits, it is not apparent that the defendant has any standing to object."

It should be noted that in the case cited the plaintiff Rick acted as trustee for himself and five others jointly and equally interested with him in an option agreement. In the present case the trustee and bondholders do not have a joint and equal interest in the suretyship contract. Each bondholder individually has an interest in the amount unpaid on his bond and the trustee, without a personal interest, represents all the bondholders collectively.

The fear expressed by the present defendant that if the action is permitted to be prosecuted by the trustee alone the defendant may be deprived of a set-off or counterclaim against one or more of the bondholders is with-

out foundation, for, as stated in 2 A. L. I. Restatement of the Law of Trusts, 982, §329:

"If a claim against a third person is held in trust, the third person can set off a claim held by him against the beneficiary if, but only if, not to permit him to do so would result in circuity of action."

Another reason advanced by the defendant for the insufficiency in law of the plaintiff's claim is that under their contract the sureties agree to indemnify and make good "any and all deficit that shall or may accrue upon foreclosure of the said Mortgage and sale of the property upon which it is secured," and since the statement of claim avers no foreclosure of the mortgage by the trustee the condition imposed upon the sureties' liability has not occurred.

In the first place, it must be noted that the contract of suretyship also contains a promise or guaranty of the payment of the bonds and mortgage. Further, defendant contends that the condition that the deficit must appear by foreclosure and sale means a foreclosure by the trustee, which would limit it to foreclosure by sci. fa. and subsequent sale under a writ of lev. fa. But the contract does not provide for foreclosure by the trustee. It provides for indemnifying ány deficit which shall accrue upon foreclosure and sale. In 26 C. J. 887, it is said that foreclosure is a process "by which all further right existing in a mortgagor to redeem the estate is defeated and lost to him. . . . The term is also loosely applied to any of the various methods, statutory or otherwise, known in different jurisdictions, of enforcing payment of the debt secured by a mortgage, by taking and selling the mortgaged estate." See also 3 Words and Phrases (1st series) 2878, 2880; (3d series) 726. In Tice et al. v. Tice et al., 208 Iowa 145, 224 N. W. 571, the court said:

"Foreclosure 'is selling the property under the direction and in pursuance of an order of the court, by an officer thereof, or a person appointed for that purposes;

and applying the proceeds of the mortgaged premises to the discharge of incumbrances according to priority, and paying the balance, if any, to the mortgagor.' "

Applying these principles we conclude that the averment that the mortgaged premises were sold in bankruptcy proceedings and the proceeds distributed among the bondholders satisfies the conditions of the contract of suretyship.

The argument that the statement does not reveal any consideration for the promise of the sureties is without merit. The contract recites that the promise of the sureties is made in consideration of the loan by the bondholders and the acceptance of the mortgage by the trustee. The mortgage was executed and delivered on the same date the contract of the sureties was made and it appears from the statement that the bonds were sold and the loans actually made after the execution of the contract of suretyship and in reliance upon it. It requires no citation of authorities to state that where A says to B, "Lend money to C and I will guarantee payment", and B subsequently makes a loan to C, the loan or extension of credit to C is consideration for A's promise.

We find no merit in any of the other questions of law raised by the defendant.

And now, July 20, 1936, the defendant's affidavit of defense raising questions of law is overruled and dismissed and the defendant is granted leave, within 15 days from this date, to file and serve an affidavit of defense to the merits.